## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CLIFF DUMAS**,

      Plaintiff,

  vs.                             No. **CIV-02-1238 MCA/ACT** (ACE)

**INFINITY BROADCASTING CORPORATION**,
and **WUSN-FM**,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court pursuant to *Defendants' Motion to Dismiss for Lack of In Personam Jurisdiction or, in the Alternative, to Transfer Venue* [Doc. No. 3] filed on October 9, 2002. Having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, the Court finds that *in personam* jurisdiction over Defendants is lacking and, in the interest of justice, this case must be transferred to the United States District Court for the District of Illinois pursuant to 28 U.S.C. § 1631. Accordingly, Defendant's motion to transfer is granted.

**I.**     **BACKGROUND**

This action commenced on August 27, 2002, when Plaintiff filed his *Complaint for Damages* in the Second Judicial District Court of Bernalillo County, New Mexico. Based on the diversity of citizenship and amount in controversy, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. [Doc. No. 1.] On October 9, 2002,

Defendants moved to dismiss or, in the alternative, to transfer this case on grounds of improper venue and lack of personal jurisdiction. [Doc. No. 3.]

The facts relevant to Defendant's motion can be summarized as follows. Defendant Infinity Broadcasting Corporation is a Delaware corporation with its principal place of business in New York. Defendant Infinity Broadcasting Corporation is the parent company of Infinity Broadcasting Corporation of Illinois. The latter company is a Delaware corporation with its principal place of business in Chicago, Illinois. Defendant WUSN-FM is a radio station in Chicago, Illinois that is owned and operated by Infinity Broadcasting Corporation of Illinois. (Lowy Aff. ¶¶ 1-3.) Justin Case is the Program Director at WUSN-FM in Chicago, Illinois. (Case Aff. ¶ 1.) There is no evidence that any of the above business entities broadcast in New Mexico or maintain any offices or agents in New Mexico.

Plaintiff Cliff Dumas is a New Mexico resident who has worked in the radio business for over 24 years and who began employment with Citadel Communications Southwest as a radio personality on Citadel's Albuquerque country radio station, KRST, in June 2000. (Dumas Decl. ¶¶ 1-2.) Mr. Case has known Plaintiff for several years, having first made his acquaintance sometime between 1994 and 1997 while employed at radio station WDSY in Pittsburgh, Pennsylvania. (Case Aff. ¶ 2.)

In February 2002, Mr. Case contacted Plaintiff about a job opportunity at WUSN-FM in Chicago. (Dumas Decl. ¶ 3.) A series of written and telephonic communications concerning this job opportunity ensued between the parties. There is no evidence, however,

that any of Defendants' personnel ever traveled to New Mexico for the purpose of communicating in person with Plaintiff. (Case Aff. ¶ 3.)

During the communications described above, Plaintiff claims that Defendants directed him to obtain a release from his contract with his current employer in New Mexico so that Plaintiff and Defendants could finalize an agreement under which Plaintiff would begin working on WUSN-FM's morning radio show in Chicago. According to Plaintiff, he secured such a release at a cost of $9,000 and thereafter reached an agreement with Defendants as to his salary, bonus structure, show format, community involvement, and start date for the morning-show position at WUSN-FM in Chicago. Plaintiff claims that Defendants, acting through Mr. Case, promised to hire him in May 2002, and that he immediately initiated steps to sell his house in Albuquerque and look for a new residence in Chicago in reliance on this promise. In June 2002, however, Defendants notified Plaintiff that they no longer intended to hire him, and this litigation ensued. (Dumas Decl. ¶¶ 5-11.)

## II.   ANALYSIS

When, as here, a Court rules on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086, 1091 (10th Cir. 1998). Under this standard, Plaintiff bears the burden of "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over" Defendants. Id. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case

demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

In this case, Plaintiff sought to invoke personal jurisdiction over Defendants in a New Mexico court pursuant to the State of New Mexico's "long arm" statute. See N.M. Stat. Ann. § 38-1-16(A) (Michie 1978 & Supp. 1998). "This statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002-NMSC-018, ¶ 6, 132 N.M. 312, 48 P.3d 50. Thus, the dispositive question is whether a New Mexico court's exercise of personal jurisdiction over Defendants in this case is consistent with the constitutional requirement of due process. See id. ¶ 7.

To comport with due process, a court's exercise of personal jurisdiction over a nonresident defendant is proper only "if minimum contacts exist between the defendant and the forum state such that maintenance of the lawsuit would not offend 'traditional notions of fair play and substantial justice.'" Doering v. Copper Mountain, Inc., 259 F.3d 1202, 1210 (10th Cir.2001) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)). The minimum contacts required to meet this standard may be general or specific. A court may exercise general jurisdiction if the defendant's contacts with the forum state are "continuous and systematic," as when a defendant routinely solicits or holds itself out as doing business in the forum state through a local office, agents, and advertisements. See id. "[A] court may exercise specific jurisdiction over a defendant if it purposefully

directs activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Id.

In this case, Plaintiff's submissions are wholly insufficient to show the type of continuous and systematic contacts with the State of New Mexico that would warrant an exercise of general jurisdiction over Defendants by this Court. Thus, Plaintiff's choice of forum must rest on a prima facie showing that the requirements for an exercise of specific jurisdiction have been satisfied. The Court concludes that Plaintiff has failed to make such a prima facie showing.

Specific jurisdiction contains two requirements. See OMI Holdings, Inc., 149 F.3d at 1091. First, a plaintiff must show that "the defendant purposefully directed its activities at residents of the forum," Doering, 149 F.3d at 1091, such that the defendant "should reasonably anticipate being haled into court there," World-Wide Volkswagen Corp., 444 U.S. at 297. In this context, a purposeful availment of the forum state does not simply mean that a defendant intentionally contacted a person who happened to be residing in New Mexico. Rather, the focus is on whether the transaction at issue amounts to a purposeful decision by Defendants "to participate in the local economy and to avail themselves of the benefits and protections of New Mexico law." FDIC v. Hiatt, 117 N.M. 461, 464, 872 P.2d 879, 882 (1994).

The second requirement for specific jurisdiction is that the forum state's exercise of personal jurisdiction over the defendant must be fair and reasonable "in light of the circumstances surrounding the case." OMI Holdings, Inc., 149 F.3d at 1091. Determining

whether this requirement is satisfied entails consideration of several factors, including the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. See Burger King Corp., 471 U.S. at 477.

The two requirements for specific jurisdiction described above are interrelated, such that "'the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction.'" OMI Holdings, Inc., 149 F.3d at 1092 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)). Conversely, "an especially strong showing of reasonableness may serve to fortify a borderline showing of" minimum contacts. Alioto, 26 F.3d at 210.

In this case, Plaintiff's showing of minimum contacts is quite weak. There is no evidence that Defendants purposefully sought out job applicants for their morning radio show position in Chicago by means of an advertisement or job listing that was publicly posted or circulated in New Mexico, nor is there evidence that Defendants sought to avail themselves of the benefits or protections of New Mexico law in their alleged pursuit of a contract with Plaintiff. Cf. Hiatt, 117 N.M. at 464, 872 P.2d at 464 (attributing significance to the fact that the parties' agreement did not include a "choice of law provision favoring New Mexico law"). Rather, the evidence indicates that Mr. Case initiated contact with Plaintiff based on Plaintiff's individual reputation as a radio personality and his prior

acquaintance with Plaintiff while employed in Pittsburgh, Pennsylvania. It was merely fortuitous that Plaintiff happened to be working in New Mexico when Mr. Case sought to reestablish contact with him in February 2002. Cf. Burger King Corp., 471 U.S. at 475 (noting that random, fortuitous, or attenuated contacts are not sufficient to justify an exercise of jurisdiction in this context).

Although Plaintiff's response to Mr. Case's inquiry led to further communications which ultimately resulted in the injuries alleged in Plaintiff's *Complaint*, the Court's analysis cannot rest solely on Plaintiff's own actions in seeking out further contact with Defendants. See id. at 478 (noting that an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts); OMI Holdings, Inc., 149 F.3d at 1092 (noting that the "minimum contacts" necessary to establish personal jurisdiction over a non-resident defendant do not include "the unilateral acts of someone other than the defendant"). In this case, the performance of the alleged contract was to occur in Illinois, and the mere fact that some of the negotiations leading to this contract involved written and telephonic communications with a New Mexico resident is not dispositive. See DeVenzeio v. Rucker, Clarkson & McCashin, 1996-NMCA-064, ¶ 10, 121 N.M. 807, 918 P.2d 723 ("Ordinarily, the use of mail and telephone services to contact a New Mexico resident from out of state is insufficient to satisfy the 'purposeful availment' prong of a minimum-contacts analysis.").

Having concluded that Plaintiff's showing of minimum contacts is quite weak, Defendants are not required to make an especially strong showing of unreasonableness in order to defeat this Court's jurisdiction over them. See OMI Holdings, Inc., 149 F.3d at

1092.  With regard to the reasonableness inquiry, the Court notes that Plaintiff has not identified a strong interest of the forum state in adjudicating the dispute, nor does he identify any fundamental substantive social policy that would be advanced by litigating this case in New Mexico, or that would be thwarted by litigating this case in Illinois.  The practical burdens and inconveniences of litigating out of state appear to be nearly equal among the parties, and retention of the case on this Court's docket does not appear necessary to bring about an efficient resolution of the controversy.  Cf. Burger King Corp., 477 U.S. at 477 (listing factors to be considered in assessing the reasonableness and fairness of a forum state's exercise of personal jurisdiction over a non-resident defendant).  Thus, Plaintiff's argument as to the reasonableness of this Court's exercise of jurisdiction over Defendants is not sufficiently strong to overcome his exceedingly weak showing as to minimum contacts.  It follows that the constitutional prerequisites for this Court's exercise of personal jurisdiction over Defendants have not been satisfied in this case.

The Court next determines what measures are required to remedy this jurisdictional defect.  Generally, a court's determination that it lacks personal jurisdiction over a defendant will result in a dismissal without prejudice.  See Fed. R. Civ. P. 41(b); Hollander v. Sandoz Pharm. Corp., 289 F.3d 1193, 1216 (10th Cir.), cert. denied, 123 S. Ct. 697 (2002).  In the alternative, however, "[j]urisdictional defects that arise when a suit is filed in the wrong federal district may be cured by transfer under the federal transfer statute, 28 U.S.C. § 1631, which requires a court to transfer such an action 'if the transfer is in the interest of justice.'"

Haugh v. Booker, 210 F.3d 1147, 1150 (10th Cir. 2000) (quoting 28 U.S.C. § 1631); see generally 2 James Wm. Moore, Moore's Federal Practice § 12.31[8] (3d ed. 2003).

Finding that "Congress gave broad authority to permit the transfer of an action between any two federal courts," the Tenth Circuit has held that "28 U.S.C. § 1631 controls the action of a federal court when it finds that it lacks jurisdiction but that another federal court has jurisdiction." Ross v. Colo. Outward Bound Sch., Inc., 822 F.2d 1524, 1526-27 (10th Cir. 1987). In this case, Defendants' own admissions indicate that the United States District Court for the Northern District of Illinois would have jurisdiction over this case. Transfer to that district would serve to reduce the risk that Plaintiff's claims might become time-barred if they were dismissed at this juncture. See id. at 1527. For these reasons, this Court finds that another federal court has jurisdiction and that the interests of justice require a transfer to that district in lieu of a dismissal without prejudice.

### III. CONCLUSION

For the foregoing reasons, this Court lacks personal jurisdiction over Defendants, and the interests of justice require that this jurisdictional defect be cured by transferring this action to the United States District Court for the Northern District of Illinois.

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion to Dismiss for Lack of In Personam Jurisdiction or, in the Alternative, to Transfer Venue* [Doc. No. 3] is **GRANTED** under the terms described herein.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall promptly transfer this action to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1631.

**SO ORDERED**, this 30th day of June, 2003, in Albuquerque, New Mexico.

                                        **M. CHRISTINA ARMIJO**
                                        United States District Judge